United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORENO ET AL, | No. C05-04432 MJJ |
| Plaintiff, | **ORDER DISQUALIFYING BAILEY PINNEY FIRM** |
| v. | |
| AUTOZONE, INC, | |
| Defendant. / | |

## INTRODUCTION

Before the Court is AutoZone's Motion To Disqualify Plaintiff's Counsel And Impose Related Discipline. (Docket No. 181.)  Plaintiffs' counsel, the Bailey Pinney P.C. firm, opposes the motion.  For the following reasons, the Court **GRANTS** the Motion and **DISQUALIFIES** the Bailey Pinney firm from further representation of Plaintiffs, putative class members, or any other persons or entities involved in this matter.[1]

## FACTUAL BACKGROUND

**A.    This Action.**

In the putative class action complaint filed in this action on November 1, 2005, Plaintiffs Michele Medrano and Claudia Moreno[2], former employees of Defendant Autozone Inc.

---

[1] Issues of attorney discipline raised by the conduct described in this order remain under submission and, to the extent necessary, will be addressed by further order of the Court.

[2] Ms. Moreno's claims were dismissed without prejudice by this Court on April 6, 2007.  (Docket No. 109.)

**United States District Court**
For the Northern District of California

1   ("Autozone"), sought remuneration for a series of claimed wage and hour law violations.  Plaintiffs'

2   attorneys of record were originally James A. Krutcik and A. Nicholas Georggin, both members of

3   the California State Bar and members of the law firm then known as Bailey, Pinney, Georggin &

4   Krutcik, LLP.  (Docket No. 1.)   In February 2006, this Court granted the *pro hac vice* applications

5   of two additional members of that firm, A.E. Bud Bailey, and J. Dana Pinney.  (Docket Nos. 20,

6   23.)[3]  Upon the dissolution of that firm, this Court on September 25, 2006 granted a motion to

7   withdraw attorneys Georggin and Krutcik, and the law firm Bailey, Pinney, Georggin & Krutcik,

8   LLP, as attorneys of record for Plaintiffs.  (Docket No. 72. ) The Court's September 25, 2006 order

9   substituted the newly-constituted Bailey Pinney P.C. firm ("Bailey Pinney"), in which A.E. Bud

10  Bailey and J. Dana Pinney were partners, as attorney of record for Plaintiffs, based upon Bailey

11  Pinney's representation that Bailey Pinney lawyer Bonnie Mac Farlane, a member of the California

12  State Bar, would serve as local counsel.  (Docket Nos. 68-71.) On February 7, 2007, Bailey Pinney

13  added another of its lawyers, Shelby L. Clark, a member of the California State Bar, as an additional

14  attorney of record in the case.  (Docket No. 100.)[4] On June 13, 2007, Bailey Pinney added another

15  of its lawyers, Jose R. Mata, a member of the California State Bar, as an additional attorney of

16  record in the case.  (Docket No. 120.)  AutoZone's instant Motion was heard on October 25, 2007.[5]

17  **B.      The *Ellison* Action.**

18          In a putative class action complaint filed in this district on December 7, 2006, Plaintiff

19  Jimmy Ellison sought remuneration for a series of claimed wage and hour law violations against

20  AutoZone, the same defendant as in this action.  (Case No. 06-7522, Docket No. 1.)  Ellison's

21  attorneys of record were originally Shelby L. Clark and Bonnie Mac Farlane of Bailey Pinney PC,

22  both members of the California State Bar.  (Case No. 06-7522, Docket No. 1.)  On January 30, 2007,

23  this Court granted the *pro hac vice* applications of two additional members of Bailey Pinney, A.E.

---

24
25      [3] Messrs. Bailey and Pinney are both members of the Oregon and Washington state bars.  They are not members of the California State Bar.

26      [4] Shelby L. Clark withdrew as counsel of record on October 17, 2007 (Docket No. 201.), after AutoZone's instant
27      Motion To Disqualify Plaintiff's Counsel And Impose Related Discipline had been filed and fully briefed.

28      [5] On November 14, 2007, after the hearing on AutoZone's instant Motion, California attorneys Marc Primo and Joseph Cho of the Initiative Legal Group, LLP associated in as additional attorneys of record for Plaintiff Medrano.  (Docket No. 207.)

1  Bud Bailey, and J. Dana Pinney, to appear in the *Ellison* action. (Case No. 06-7522, Docket Nos.

2  20 & 21.) On June 13, 2007, Bailey Pinney added another of its lawyers, Jose R. Mata, a member of

3  the California State Bar, as an additional attorney of record in the case. (Case No. 06-7522, Docket

4  No. 40.) On October 17, 2007, Shelby L. Clark withdrew as counsel of record for Ellison. (Case

5  No. 06-7522, Docket No. 65.)

6  **C.    The *Martinez* Action.**

7       In March 2004, three former employees initiated a putative class action against AutoZone in

8  Los Angeles Superior Court, styled *Martinez, et al. v. AutoZone*. The *Martinez* plaintiffs asserted,

9  among other things, that AutoZone allegedly failed to authorize and permit employees to take

10  statutory meal breaks and rest breaks. After negotiations, the parties reached a classwide settlement

11  and presented it to the *Martinez* court for preliminary approval on June 6, 2005. The *Martinez* court

12  entered preliminary approval and ordered notice of the settlement by first class mail. Only three

13  class members objected to the settlement, including Michele Medrano and Claudia Moreno, the

14  original Plaintiffs in this action.

15       On behalf of Medrano and Moreno, the Bailey Pinney firm asserted numerous objections to

16  the settlement and class notice. The *Martinez* court overruled these objections and granted final

17  approval of the settlement by order dated December 13, 2005. Medrano and Moreno appealed the

18  Martinez judgment through their counsel, the Bailey Pinney firm. On May 14, 2007, the California

19  Court of Appeal affirmed the settlement amount, terms of the settlement agreement, content and

20  manner of providing the class notice, and the final approval order. *See Martinez v. AutoZone, Inc.*,

21  2007 WL 1395477 (Cal. App. May 14, 2007). The Court of Appeal remanded the case for the

22  limited purpose of amending the judgment to conform to the settlement agreement and class notice.

23  The Bailey Pinney firm subsequently filed objections to an amended judgment before the *Martinez*

24  trial court.

**LEGAL STANDARD**

25

26       Motions to disqualify counsel are decided under state law. *See In re County of Los Angeles*,

27  223 F.3d 990, 995 (9th Cir. 2000). Ultimately, however, the decision to disqualify counsel for

28  conflict of interest is within the trial court's discretion. *See Trone v. Smith*, 621 F.2d 994, 999 (9th

3

1  Cir.1980).  Disqualification motions are subject to strict judicial scrutiny given the potential for

2  abuse.  *See Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd.*, 760 F.2d 1045,

3  1049 (9th Cir.1985).

4                                    **ANALYSIS**

5       AutoZone's Motion requests that this Court consider at least eleven different alleged ethical

6  violations by the Bailey Pinney firm as a basis for disqualification.  Upon review, the Court

7  concludes that much of the alleged misconduct does not present a basis for disqualification or

8  discipline.  Some of Autozone's allegations are not substantiated by the record before the Court.

9  Other alleged conduct, although perhaps an example of overzealous advocacy, does not rise to the

10 level of ethical violations justifying disqualification or discipline.  Indeed, AutoZone's kitchen-sink

11 approach to its disqualification motion underscores the concern, reflected in the caselaw, that

12 disqualification motions are"often tactically motivated" and "tend to derail the efficient progress of

13 litigation."  *Visa U.S.A., Inc. v. First Data Corp.*, 241 F.Supp.2d 1100, 1104 (N.D. Cal. 2003).

14      Nonetheless, separating the wheat from the chaff, there are three specific allegations of

15 misconduct raised in the Motion that this Court finds are fully supported in the record and that raise

16 serious questions as to whether the Bailey Pinney firm should be allowed to continue its

17 representation of Plaintiffs, witnesses, and the putative class in this litigation.  In particular, as

18 discussed in more detail below, the Court finds that the record demonstrates that Bailey Pinney has

19 breached its ethical obligations by: (1) failing to secure informed consent for concurrent

20 representation of conflicting interests, (2) initiating unauthorized contact with represented parties,

21 and (3) submitting inaccurate or misleading information regarding its local counsel when seeking

22 *pro hac vice* admission.  Bailey Pinney has offered no adequate explanation or excuse for these

23 ethical breaches.  After careful consideration, the Court finds that disqualification of the Bailey

24 Pinney firm is  appropriate.

25 **A.    The Record Demonstrates That Bailey Pinney Has Failed To Act Consistently With Its**

26 **Ethical Obligations.**

27      The Court finds that Bailey Pinney has not acted consistently with its ethical obligations in

28 three ways, as described below.

**United States District Court**
For the Northern District of California

1.    **Concurrent Representation Of Conflicting Interests In The *Martinez* And *Moreno* Actions.**

AutoZone contends that Bailey Pinney, without obtaining written informed consent, has engaged in concurrent representation of clients in connection with this action, where such clients have an actual conflict of interest in light of the pending *Martinez* class action settlement.    The Court agrees.

a.    **Bailey Pinney's Representation of Medrano And Moreno.**

Bailey Pinney represents Plaintiff Michele Medrano, and former Plaintiff Claudia Moreno (whose claims have now been dismissed without prejudice), in this action.    Bailey Pinney has also represented Medrano and Moreno since at least late 2005 in connection with their efforts to challenge the settlement reached in the state court *Martinez* class action.    After the *Martinez* court preliminarily approved a classwide settlement, 4534 (21.37%) class members submitted timely claim forms, 214 (1.01%) opted out of the class (1.01%, and only three class members objected to the settlement.    *See Martinez*, 2007 WL 1395477 at *4-5.    Medrano and Moreno are two of the three class members that objected to the *Martinez* settlement.    *See id.* at *4-5.

The record before the Court demonstrates, and Bailey Pinney does not dispute, that through the efforts of their counsel, Medrano and Moreno have mounted a series of challenges to the settlement and the judgment entered in the *Martinez* class action from late 2005 through the present. Medrano and Moreno asserted numerous objections to the settlement and class notice in 2005, including objections that:

> (1) the settlement amounts were too low; (2) the notice did not specify the precise amount each class member would receive; (3) the notice did not adequately advise class members of their rights; (4) the parties did not provide the court with sufficient information to assess the merits of the settlement; (5) the notice did not state Rudy (the mediator) endorsed the settlement; (6) the release is overbroad; and (7) the proposed settlement did not address many issues.

2007 WL 1395477 at *5; *see also* Docket No. 16, Exh. 10.    The *Martinez* court overruled these objections and granted final approval of the settlement on December 13, 2005.    (Docket No. 16, Exh. 4.)    Medrano and Moreno then appealed the *Martinez* judgment in January 2006, and continued to challenge the settlement on appeal.    (Docket No. 16, Exh. 11.)    On May 14, 2007, the California

5

1  Court of Appeal affirmed the settlement amount, the terms of the settlement agreement, the content

2  and manner of providing the class notice, and the final approval order; the Court of Appeal

3  remanded for the limited purpose of amending the judgment to conform to the settlement agreement.

4  *See Martinez*, 2007 WL 1395477 at *7-11. As recently as August 2007, after the disqualification

5  motion was filed, Medrano and Moreno continued to challenge the amended judgment issued by the

6  *Martinez* trial court upon remand. (Reply Hoffman Decl., ¶ 6.)

7          **b.      Bailey Pinney's Representation Of Declarants Knox, McDaniel And**

8                    **Veloz.**

9          Bailey Pinney's privilege log indicates that Burt Knox has been a client of Bailey Pinney for

10  purposes of this litigation since at least October 30, 2006 (Hoffman Decl., Exh. 25, Entry No. 632;

11  *see also* Entry Nos. 633, 637, 654, 668, 694-695), that James McDaniel has been a client since at

12  least November 2, 2006 (Hoffman Decl., Exh. 25, Entry No. 635; *see also* Entry Nos. 644, 670, 672,

13  676), and that Martin Veloz has been a client since at least November 16, 2006 (Hoffman Decl.,

14  Exh. 25, Entry No. 643; *see also* Entry Nos. 666, 687, 688.) After Bailey Pinney submitted

15  declarations in July 2007 from Knox, McDaniel and Veloz (Hoffman Decl., Exhs. 17-19) in support

16  of Plaintiffs' motion for class certification in this action, AutoZone issued subpoenas to take

17  deposition of these individuals.[6] Bailey Pinney represented each of these declarants in connection

18  with their depositions. (Hoffman Decl., Exh. 3 at 7:22-24; Exh. 4 at 14:3-5; Exh. 5 at 6-9.)

19          McDaniel, Knox and Veloz are also non-objecting class members in the *Martinez* action;

20  each of them submitted claim forms and agreed to the settlement. (Malana Decl., Exh. 2.)

21          **c.      Moreno And Medrano, As Objectors To The *Martinez* Settlement, Have**

22  **An Actual Conflict Of Interest With Non-Objecting Class Members Awaiting Payment.**

23          A conflict of interest exists when a lawyer's duty on behalf of one client obligates the lawyer

24  to take action prejudicial to the interests of another client, i.e., "when in behalf of one client, it is his

25  duty to contend for that which duty to another client requires him to oppose." *Flatt v. Sup. Ct.*, 9

26  Cal. 4th 275, 282 (1994). An "adverse" interest is one that is "hostile, opposed, antagonistic . . .

27

28          [6] Bailey Pinney's privilege log indicates that McDaniel and Bailey Pinney were working on a draft of this declaration
    as early as March 15, 2007. (Hoffman Decl., Exh. 25, Entry No. 676.)

1  detrimental, unfavorable" to one's own interests. *See Ames v. State Bar*, 8 Cal. 3d 910, 917 (1973).

2  The Court finds that Moreno and Medrano, as objectors to the *Martinez* settlement, have an

3  actual conflict of interest with, and adverse interest to, declarants McDaniel, Knox and Velox, each

4  of whom is a *Martinez* class member that has not objected to the settlement and has submitted a

5  claim form for payment. Bailey Pinney's representation of Moreno and Medrano from late 2005 to

6  the present has obligated the law firm to advocate that the settlement and judgment in *Martinez*

7  should not be approved – a position that Bailey Pinney has zealously advanced before the state trial

8  and appellate courts. This advocacy is adverse to the interests of McDaniel, Knox and Velox, also

9  clients of Bailey Pinney since at least November 2006, as they are *Martinez* class members who

10 have approved the settlement, submitted claim forms, and await payment. *Cf. Georgine v. Amchem*

11 *Products, Inc.*, 160 F.R.D. 478, 495 n.25 (E.D. Pa. 1995) (noting that objectors often have adverse

12 interests to class members approving settlement); *In re Corn Derivative Antitrust Litig.*, 748 F.2d

13 157, 162 (3d. Cir. 1984) (affirming disqualification of attorney representing objector to class

14 settlement on appeal because his firm had previously represented class members who supported the

15 settlement).

16 Bailey Pinney's assertion that no actual conflict of interest has existed because "[h]ow

17 adamantly plaintiffs and declarants do or do not oppose the settlement is unknown" (Opp. at 9:13-

18 14) flies in the face of the positions taken by the declarants and the Plaintiffs in the *Martinez* action.

19 Contrary to Bailey Pinney's representations in its opposition brief and at oral argument, Moreno and

20 Medrano challenged not merely the scope of the release created by the *Martinez* settlement, but the

21 substance of the *Martinez* settlement itself. *See Martinez*, 2007 WL 1395477 at *5; *see also* Docket

22 No. 16, Exh. 10. Accordingly, the Court rejects Bailey Pinney's assertion that the interests of Knox,

23 McDaniel, Veloz, Medrano and Moreno have all aligned during the relevant time periods where

24 there has been concurrent representation. Since at least November 2006 (when Bailey Pinney began

25 representing Knox, McDaniel and Veloz in this matter), Bailey Pinney has represented clients with

26 an actual conflict of interest with respect to the outcome of the *Martinez* settlement.

27 ///

28 ///

**United States District Court**
For the Northern District of California

1

           **d.**      **Bailey Pinney's Conduct Does Not Comply With Rule of Professional**

2

                  **Conduct 3-310(c)(3) And Requires "Per Se" Disqualification.**

3

      This Court follows California ethical standards. *In re County of Los Angeles*, 223 F.3d 990,

4

995 (9th Cir. 2000) ("Because we apply state law in determining matters of disqualification, we must

5

follow the reasoned view of the state supreme court when it has spoken on the issue.); Civil Local

6

Rule 11-4(a)(1). The applicable standards of professional responsibility are found in the Rules of

7

Professional Conduct of the State Bar of California. The applicable standard of conduct is set forth

8

in Rule 3-310(c)(3), which provides as follows:

9

> A member shall not, without the informed written consent of each
> client . . . [r]epresent a client in a matter and at the same time in a

10

> separate matter accept as a client a person or entity whose interest in
> the first matter is adverse to the client in the first matter.

11

      Here, Bailey Pinney represents Medrano and Moreno in this matter and in the *Martinez*

12

matter, and at the same time has accepted as a client in this matter three declarants whose interest in

13

the *Martinez* matter is adverse to the interests of Medrano and Moreno. Rule 3-310(c)(3) required

14

Bailey Pinney to obtain informed written consent to proceed with such concurrent representation.

15

*See also Flatt*, 9 Cal. 4th at 284. Accordingly, Bailey Pinney had a duty to advise all five clients –

16

Knox, McDaniel, Veloz, Medrano, and Moreno – of all of the relevant facts and circumstances

17

pertaining to the conflict so that they could make an informed decision about whether to consent to

18

the concurrent representation, despite the conflict.

19

      The Court finds, based on the record before it, that Bailey Pinney did not take the requisite

20

steps to obtain informed written consent. McDaniel and Knox both testified at their depositions that

21

the Bailey Pinney firm did not advise them of any settlement in the *Martinez* action, and did not

22

advise them of a pending appeal aimed at defeating the *Martinez* settlement, when Bailey Pinney

23

initially contacted them and obtained their affidavits. (Hoffman Decl., Exh. 3 at 12:5-8, 14:6-17;

24

Exh. 4 at 21:5-20.) Veloz testified that he was notified of other pending lawsuits against Autozone

25

"two days" before his deposition, well after Bailey Pinney began representing him. (Hoffman Decl.,

26

Exh. 5 at 7-9.) The record is silent as to whether any disclosures were made to Moreno or Medrano.

27

Bailey Pinney has introduced no evidence that it obtained informed written consent from any of

28

these five individuals that it currently represents in this matter.

United States District Court
For the Northern District of California

1    Absent each client's informed written consent, dual representation of clients whose interests

2    actually conflict is prohibited and results in "per se or automatic" disqualification. *Flatt*, 9 Cal. 4th

3    at 284. Moreover, under the "hot potato rule", dual representation conflicts cannot be cured by the

4    expedient of severing the relationship with one of the clients. *Id.* at 288; *see also Truck Ins.*

5    *Exchange v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1056 (1992). Accordingly, the Court is

6    required to disqualify the Bailey Pinney firm from further representation in this matter.[7]

7    Bailey Pinney argues that the "per se" disqualification rule should not apply here because

8    Medrano and Moreno, having lost their challenge to the *Martinez* settlement before the California

9    Court of Appeal in May 2007, now only challenge the scope of the amended judgment in the

10   *Martinez* case, and therefore are no longer actually adverse to the interests of Knox, McDaniel, and

11   Veloz. In essence, Bailey Pinney argues that even if they once concurrently represented adverse

12   interests, the passage of time has rendered those interests no longer adverse. The Court rejects this

13   argument for two reasons. First, the Court finds that, even as of the time of the hearing on

14   AutoZone's disqualification motion, the interests of Knox, McDaniel, Veloz and other non-objecting

15   *Martinez* class members, who seek prompt entry of judgment and payment of their portion of the

16   settlement, remain actually adverse to those of Medrano and Moreno, who continue to litigate

17   against the trial court's amended judgment and thereby delay final resolution of the *Martinez* matter.

18   Second, the same principles that motivate the "hot potato" rule – which prevents an attorney from

19   curing dual representation conflicts by the expedient of severing the relationship with a preexisting

20   client – apply here to prevent the Bailey Pinney from avoiding the effect of the "per se"

21   disqualification rule here merely by exhausting the full course of Medrano's and Moreno's options

22   for challenging the *Martinez* settlement before the California state courts (to the detriment of the

23

24   [7] The fact that Plaintiffs Moreno's and Medrano's interests, on the one hand, and the interests of declarants Knox,
25   McDaniel, Veloz, on the other hand, may not be different with respect to the outcome of *this* litigation does not prevent
     operation of the *per se* disqualification rule in this matter. When applying this rule, the adversity in positions between two
26   concurrently-represented clients need not be attributable to the dispute raised by the litigation in which disqualification is
     sought. Indeed, dual representation that violates Rule 3-310(C)(3) leads to automatic disqualification even where "the
27   simultaneous representations may have nothing in common, and there is no risk that confidences to which counsel is a party
     in the one case have any relation to the other matter." *Flatt*, 9 Cal. 4th at 282. In other words, Bailey Pinney would be
28   subject to automatic disqualification from representing Medrano and Moreno in this matter even if it merely simultaneously
     represented another client with interests that actually conflicted with those of Medrano and Moreno due to an unrelated
     dispute, even if that other client had no interest or stake in the outcome of this case.

**United States District Court**
For the Northern District of California

1   non-objecting Martinez class members that it also represented). *See Truck Ins. Exchange*, 6 Cal.

2   App. 4th at 1056. Bailey Pinney's conduct has irretrievably undermined its ability to fulfill its duty

3   of loyalty to its current clients. *See id.* Moreover, Bailey Pinney should not now be allowed to

4   profit from a conflict of interest situation which it created. *See id.*

5        Bailey Pinney also contends that conflicts rules cannot be mechanically applied to class

6   action lawsuits, citing several out-of-circuit cases acknowledging that disqualification rules must

7   take account of the fact that class counsel's duties frequently diverges from the opinion of either the

8   named plaintiff or other objectors. *See, e.g., Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964

9   (3d Cir. 1983); *Lazy Oil Co. v. Wilco, Corp.*, 166 F.3d 581, 589 (1999); *In Re: "Agent Orange"*

10  *Prod. Liab. Litig.*, 800 F.2d 14, 18-19 (2d Cir. 1986). But Bailey Pinney's reliance on these

11  authorities is entirely unconvincing. The circumstances here are distinguishable from these cases,

12  which involved counsel that had first represented the class, and then had sought to represent only a

13  portion of the class, once various class members newly took adverse positions. That is not the

14  situation here. Bailey Pinney simultaneously represents two different sets of clients that actively

15  have adverse interests in the *Martinez* action. The cases cited by Bailey Pinney do not intimate, let

16  alone hold, that such concurrent representation of adverse interests could be appropriate. To the

17  contrary, one of these authorities expressly recognizes that objectors "become adverse parties to the

18  remaining class representatives (and the rest of the class)." *Lazy Oil*, 166 F.3d at 589.

19       California's stringent approach to conflicts involving representation of ***absent*** class members

20  supports the Court's finding that Bailey Pinney should be disqualified. "[I]n a class action context,

21  disqualification is more likely because putative class counsel are subject to a 'heightened standard'

22  which they must meet if they are to be allowed by the Court to represent absent class members."

23  *Huston v. Imperial Credit Commercial Mortgage Invest. Corp.*, 179 F. Supp. 2d 1157, 1167 (C.D.

24  Cal. 2001). In the class action context, the Court has an obligation to closely scrutinize the

25  qualifications of counsel to assure that all interests, including those of as yet unnamed plaintiffs, are

26  adequately represented. *See Cal-Pak Delivery, Inc. v. United Parcel Serv.*, 52 Cal. App. 4th 1, 11-

27  12 (1997). "[W]here there is reason to doubt the loyalty of counsel or the adequacy of counsel's

28  representation, serious questions arise concerning the preclusive effect of any resulting judgment."

United States District Court
For the Northern District of California

1   *Id.* Given that Bailey Pinney seeks to represent a large and unidentified group of putative class

2   members in this action – many of which are undoubtedly also non-objecting members of the

3   *Martinez* settlement class – conflict of interests concerns loom large with respect to Bailey Pinney's

4   request to represent the putative class. As a practical matter, Bailey Pinney can not obtain written

5   waiver of the actual conflicts of interest that exist from the absent class members. *See id.*

6   Moreover, the conflict of interest issues are further heightened by the fact that Bailey Pinney has had

7   a pecuniary interest in defeating the *Martinez* settlement and limiting the preclusive effect of any

8   *Martinez* judgment so that it can proceed with a broader suit here for alleged meal and rest period

9   violations here and recover larger attorney's fees. These additional considerations persuade that

10  court that no exception to the per se disqualification rule should be made in this case.[8]

11              **2.      Contacting Represented *Martinez* Class Members.**

12          AutoZone contends that Bailey Pinney, in litigating this matter, have breached their ethical

13  obligations by initiating unauthorized contact with represented parties. The Court finds that the

14  record evidence confirms this ethical breach.

15          The subject of the *Martinez* action and settlement were alleged meal and rest break

16  violations. Bailey Pinney does not dispute that in the *Martinez* class action, the court granted final

17  approval of the settlement on December 13, 2005, and appointed Gould & Associates and the Law

18  Offices of Daniel Emilio as class counsel. (Docket No. 16, Exh. 4.) Upon final approval, every

19  Martinez class member who declined to opt-out or object to the settlement formed an attorney-client

20  relationship with the court-appointed counsel. *See Parks v. Eastwood Ins. Serv., Inc.*, 235 F. Supp.

21  2d 1082, 1083 (C.D. Cal. 2002). Bailey Pinney was clearly aware that the *Martinez* court granted

22

23          [8] From the limited record before the Court, it appears possible that the Bailey Pinney's concurrent representation

24  of adverse interests goes beyond representation of the five specific individuals discussed above. According to Bailey Pinney's
    privilege log (Hoffman Decl., Exh. 25), since October 2006, Bailey Pinney has engaged in attorney-client communications

25  with hundreds of unidentified current or former Autozone employees that are putative class members in this case. There
    is a significant likelihood that at least some of these employees are *Martinez* class members that have not objected to the

26  settlement had have submitted claim forms. However, the degree to which Bailey Pinney has asserted attorney-client
    privilege with respect to these communications – including by withholding even the identities of most of these individuals

27  – leaves the Court unable to make specific findings of fact at this time regarding whether these situations involve the
    concurrent representation of adverse interests, and if so, whether Bailey Pinney has obtained informed written consent.

28  Because the Court has already determined that disqualification is required, the Court makes no further specific factual
    findings with respect to these issues at this time, but may find it necessary to do so in connection with attorney discipline
    issues in a later order.

**United States District Court**
For the Northern District of California

1  final approval and appointed class counsel, as it represented Medrano and Moreno in their efforts to

2  challenge the Martinez settlement before both the trial and appellate courts.

3  It is also undisputed that in October 2006, Bailey Pinney initiated contact with various

4  declarants in the *Martinez* case by sending them letters. (Mac Farlane Decl, ¶ 17.) The actual letters

5  are not in evidence, as Bailey Pinney has asserted attorney-client privilege with respect to their

6  contents. However, Bailey Pinney has provided a mail-merge version of the letter that indicates the

7  letter was captioned with both the *Martinez* and *Moreno* actions. (Mac Farlane Decl., Exh. A.) The

8  letter was, according to Bailey Pinney, sent for the purpose of procuring declarations to support

9  Plaintiff's motion for class certification. Bailey Pinney ultimately submitted five percipient witness

10  declarations in support of its motion for class certification in 2007, each of whom is also *Martinez*

11  class member that submitted a claim form.[9]  The *Martinez* class counsel was unaware of these

12  communications by Bailey Pinney and did not authorize them. (Gould Decl., ¶ 6.)

13  Bailey Pinney takes the position that its communications with these five *Martinez* declarants

14  concerned solely the subject of this litigation, and not the subject of the *Martinez* litigation, and/or

15  that these individuals originally reached to Bailey Pinney rather than the other way around. The

16  record does not support Bailey Pinney's contentions in this regard:

17  •  Knox testified at deposition that Bailey Pinney initiated contact with him by phone,

18      that they discussed the contents of an affidavit for him to sign, that the only topic he

19      could recall discussing with the Bailey Pinney investigator was "breaks", and that he

20      understood the *Moreno* litigation to concern "breaks." (Hoffman Decl., Exh. 4 at

21      9:10-11:3, 15:5-20, 19:19-24.)  Mr. Knox's declaration submitted in support of the

22      class certification motion in this action discusses rest breaks (Hoffman Decl., Exh. 18

23      at ¶ 5)  – the very issue in dispute in the *Martinez* litigation.

24  •  Similarly, Velox testified at deposition that Bailey Pinney initiated contact with him

25      by phone, that they discussed the contents of an affidavit for him to sign, and that the

26      topics discussed included "how some of the policies work in regards to meal times

27      and break times." (Hoffman Decl., Exh. 5 at 4-6.)  Mr. Velox's declaration submitted

28  _____

[9] Three of these declarants – Knox, Veloz, and McDaniel – have since been deposed in this litigation.

United States District Court
For the Northern District of California

1    in support of the class certification motion discusses meal and rest breaks.  (Hoffman

2    Decl., Exh. 19 at ¶¶ 5-6.)

3    •    Mr. McDaniel testified at deposition that Bailey Pinney initiated contact with him by

4    phone, that he was not aware of any lawsuit against Autozone other than the *Moreno*

5    lawsuit, that he understood the *Moreno* lawsuit to be about "unpaid meal and rest

6    periods." (Hoffman Decl., Exh. 3 at 8:25-9:9; 11:9-20.) Mr. McDaniel's declaration

7    submitted in support of the class certification motion discusses meal and rest breaks.

8    (Hoffman Decl., Exh. 19 at ¶¶ 6-8.)

9    •    The declarations of Messrs. Hernandez and Riepe, which were also submitted in

10    support of the class certification motion by Bailey Pinney, also discuss meal and rest

11    breaks.  (Hoffman Decl., Exh. 20 at ¶¶ 4-5; Exh. 21 at ¶¶ 4-5.)  These declarants are

12    also *Martinez* class members that have submitted claim forms.

13    The applicable standards of professional responsibility are found in the Rules of Professional

14    Conduct of the State Bar of California.  Rule 2-100(A) provides as follows:

15    While representing a client, a member shall not communicate directly
      or indirectly about the subject of the representation with a party the
16    member knows to be represented by another lawyer in the matter,
      unless the member has the consent of the other lawyer.

17

18    However, subsection (C) of the Rule indicates that it does not prohibit "[c]ommunications

19    initiated by a party seeking advice or representation from an independent lawyer of the party's

20    choice" or "communications otherwise authorized by law."

21    The Court finds that the Bailey Pinney firm violated Rule 2-100 by initiating contact with

22    *Martinez* class members regarding the subject matter of that pending appeal (meal and rest breaks),

23    despite knowing that all of the *Martinez* class members were at that time represented by the court-

24    appointed designated class counsel.  Bailey Pinney's conduct is particularly problematic given that,

25    at the same time, it represented Medrano and Moreno and was actively pursuing an appeal adverse

26    to the interests of the *Martinez* class members that it contacted.  Moreover, to the extent the contents

27    of these communications are in the record, there is nothing to indicate that Bailey Pinney took steps

28    to reduce or mitigate the harms caused by such unauthorized contact.  The Court finds that the mail-

13

**United States District Court**
For the Northern District of California

1    merge letter that Bailey Pinney indicates it sent to at least the *Martinez* declarants would have been

2    confusing to recipients, as it contained both the *Martinez* and the *Moreno* case captions at the top,

3    and did not explain that Bailey Pinney represented adverse interests to non-objecting class members

4    . (Mac Farlane Decl, Exh. A).[10]  Moreover, such confusion apparently materialized, as the

5    deposition testimony of Messrs. McDaniel and Knox cited above reflects their mistaken beliefs that

6    the *Moreno* and *Martinez* actions are one and the same.[11]

7           Bailey Pinney defends its conduct, in part, by asserting that the information and testimony

8    that it sought was solely for use in the *Moreno* action.  This is too rigid an interpretation of Rule 2-

9    100.  Though Ms. Mac Farlane represents that the purpose of the letters was "to obtain witnesses

10   regarding the issues of unpaid wages, off the clock work, and late pay", and that the letters "did not

11   include any statements regarding rest and/or meal periods" (Mac Farlane Decl., ¶ 18), Bailey Pinney

12   clearly engaged in communications regarding rest and meal breaks (the subject of the *Martinez*

13   action) with these witnesses, as the declarants' affidavits discuss such issues in detail.  Given that

14   Bailey Pinney also represented Medrano and Moreno in the *Martinez* action, such communications

15   violated Rule 2-100.

16          Bailey Pinney, citing *Community Bank of N. Virginia Second Mortgage Loan Litig.*, 418 F.3d

17   277, 313 (3d. Cir. 2005) and *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1245

18

19          [10] Bailey Pinney contends that the mail-merge letter adequately safeguarded against abuse of communications with
20   represented parties, and negated any harm caused by violation of Rule 2-100(A), because it contained the following language:
     "If you are represented by an attorney in regarding a case against AutoZone, please have your attorney contact us." (Mac
21   Farlane Decl., Exh. A.)  The Court disagrees with this analysis, particularly given the misleading nature of the letter and the
     lack of any explanation of Bailey Pinney's adverse interests to non-objecting Martinez class members.  Bailey Pinney knew
22   that all of the *Martinez* class members were represented by class counsel, and cannot avoid their obligation to adhere to Rule
     2-100 by using such a disclaimer.

23          [11] As with the conflict-of-interest issue discussed above, the record before the Court suggests that the scope of Bailey
24   Pinney's contact with represented parties may be even larger than its contact with these five *Martinez* declarants.  Plaintiff's
     privilege log shows that the Bailey Pinney Firm initiated contact with numerous unidentified current or former Autozone
25   employees by sending hundreds letters or emails in October 2006.  (Hoffman Decl., Exh. 25.)  There is a significant
     likelihood that many of these recipients were non-objecting *Martinez* class members as well.  Though the contents of these
26   letters are not in the record, the privilege log indicates that these were "letters sent to potential clients/putative class
     members/witness requesting information and/or contact with a questionnaire enclosed."  One apparent recipient of such a
27   letter produced a copy of the letter at his deposition. (Hoffman Decl., Exh. 14.)  The letter is different in content from the
     mail-merge letter put into the record by Bailey Pinney.  The degree to which Bailey Pinney has asserted attorney-client
28   privilege with respect to these communications leaves the Court unable to make specific findings of fact at this time regarding
     whether any of these communications listed on Bailey Pinney's privilege log constitute additional violations of Rule 2-100.
     The Court may find it necessary to make such findings in connection with attorney discipline issues in a later order.

1  (N.D. Cal. 2000), contends that Rule 2-100 does not apply with the same force in the class action

2  context because class counsel in *Martinez* did not possess a traditional attorney-client relationship

3  with absent class members. Bailey Pinney's reliance on these authorities is misplaced, as these

4  decisions address the nature of the relationship between lead counsel and putative class members

5  ***before*** the opt-out period has expired. Here, the opt-out period in *Martinez* had already expired, and

6  the class members at issue had already approved the settlement and accepted representation by the

7  court-appointed class counsel. Bailey Pinney initiated contact with the *Martinez* class members,

8  concerning subject matter that Bailey Pinney knew to be the subject of the *Martinez* litigation, only

9  after such class members declined to opt-out and became represented parties by joining the class.

10 Bailey Pinney identifies no authority supporting its contention that such contact, after the opt-out

11 period has expired,  initiated by attorneys hostile to the interests of the class, falls within an

12 exception to Rule 2-100.  All authority of which this Court is aware is to the contrary:

13          Once a class has been certified, some but not all aspects of the
           [attorney-client] relationship are present. A lawyer who represents the
14          named plaintiff in a class which has been certified immediately
           assumes responsibility to class members for diligent, competent
15          prosecution of the certified claims. ***However, it cannot truly be said
           that he fully 'represents' prospective class members until it is***
16          ***determined that they are going to participate in the class action.***

17 *Tedesco v. Miskin*, 629 F. Supp. 1474, 1483 (S.D.N.Y. 1986) (emphasis added); *see also Resnick v.*

18 *American Dental Ass'n*, 95 F.R.D. 372, 376 (N.D. Ill. 1982) (once class is certified, unnamed class

19 members are represented by the class counsel for purposes of ethical rules prohibiting contact with

20 represented parties).

21          Similarly, Bailey Pinney's attempt to fall back on First Amendment principles is

22 unpersuasive. The legitimacy of a court-ordered prior restraint on pre-certification communications

23 by counsel with putative class members, at a time that such putative class members are faced with

24 the decision of whether to opt-out of a class or accept a settlement, is not at issue here as it was in

25 *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), *Domingo v. New England Fish Co.*, 727 F. 2d 1429

26 (9th Cir. 1984), and *Parris v. Superior Court*, 109 Cal. App. 4th 285 (2003).  Indeed, in *Gulf Oil*, the

27 Supreme Court made it plain that the First Amendment does not protect contacts by an adversary's

28 lawyer, by making an explicit reference to the ABA Code provision prohibiting attorney

**United States District Court**
For the Northern District of California

1  communications with represented parties, and observing that "the rules of ethics properly impose

2  restraints on some forms of expression." 452 U.S. at 104 n.21.

3        Disqualification based on a violation of Rule 2-100 lies within the Court's discretion. *See*

4  *Chronometrics, Inc. v. Sysgen, Inc.*, 110 Cal. App. 3d 597, 607-08 (1980). Disqualification is proper

5  if counsel's misconduct is likely to have a continuing effect on the proceedings. *See id.* Because the

6  Court has already concluded that disqualification is appropriate based on Bailey Pinney's concurrent

7  representation of adverse interests, the Court need not determine whether Bailey Pinney's violation

8  of Rule 2-100 independently warrants disqualification.[12]

9      **3.**    **Failing To Retain Local Counsel Who Maintains A Bona Fide Office In**

10          **California.**

11        AutoZone contends that the Bailey Pinney firm misled the Court by failing to retain local

12  counsel who maintains a bona fide office in California. The record fully substantiates this

13  allegation.

14        Messrs. Bailey and Pinney are not admitted to the California Bar. When the Bailey Pinney

15  firm dissolved its relationship with former co-counsel James Krutcik and Nicholas Georgian in

16  September 2006, Messrs. Bailey and Pinney designated their law firm colleague, Bonnie Mac

17  Farlane, as local counsel and attorney-of-record in this action. (Docket No. 68.) Similarly, in the

18  related *Ellison v. Autozone* action, Case No. 06-7522, Messrs. Bailey and Pinney certified under

19  penalty of perjury that their law firm colleague, Ms. Mac Farlane, maintained an office in

20  Sacramento, California. (Case No. 06-7522, Docket Nos. 12 & 13.)

21        The record overwhelming indicates that Ms. Mac Farlane does not maintain a bona fide

22  office in Sacramento or anywhere else in California. The Sacramento address identified on the *pro*

23  *hac vice* applications and pleadings, 720 Howe Avenue, Suite 113, Sacramento, is the office of

24  attorney Thomas Hogan, not Ms. Mac Farlane. The State Bar of California lists Ms. Mac Farlane's

25  address as Bailey Pinney, in Vancouver, Washington. (Hoffman Decl., Exh. 11.) Ms. Mac

26  Farlane's stationery lists only one address in Vancouver, Washington. (Hoffman Decl., Exhs. 13 &

27

28     [12] At oral argument, AutoZone conceded that the violation of Rule 2-100 alone might not be enough to support disqualification. However, AutoZone contended that Bailey Pinney's ethical violations, in the aggregate, provide sufficient reason to disqualify the firm.

United States District Court

For the Northern District of California

14.) Pleadings filed with this Court identify toll-free "800" numbers for Ms. Mac Farlane, and her letterhead identifies office and facsimile numbers in the "360" area code of southwestern Washington. (*Compare* Hoffman Decl., Exhs. 13 & 14 *with* Docket Nos 165 & 175.)   Neither Ms. Mac Farlane nor her law office are listed in telephone listings of Sacramento. (Hoffman Decl., Exh. 6 & ¶ 19.)  Neither Ms. Mac Farlane nor the Bailey Pinney firm have their names on the door, mailboxes, or building in Sacramento (Hoffman Decl., Exh. 15 & ¶ 18.)  The Bailey Pinney web page also does not identify an office in Sacramento, California.  (Reply Hoffman Decl, Exh 26.)

Moreover, Ms. Mac Farlane's own communications in this lawsuit confirm that she does not maintain a bona fide office in Sacramento.  When Defendant attempt to serve a third-party witness subpoena on the Bailey Pinney PC by sending a process server to the Howe street office, Mac Farlane wrote in a letter that Bailey Pinney PC could not accept service for that witness.  In a footnote, Mac Farlane wrote: "Please note that the address of Bailey Pinney PC is not 720 Howe Avenue, Suite 113, Sacramento, CA 95825."  (Hoffman Decl., Exh. 13)  That letterhead identified her only office as Vancouver, Washington.

In response to these serious allegations, Bailey Pinney contends that Ms. Mac Farlane does maintain an office in Sacramento, California.  However, the only evidence submitted by Bailey Pinney on this point is that, during the relevant time period (September 25, 2006 through the present), Ms. Mac Farlane "contracted with Thomas Hogan to pay rent for the use of office space at 720 Howe Avenue, Sacramento, California" and that "Bailey Pinney, P.C. advertises for its services throughout California." (Mac Farlane Decl., ¶ 20.)  At oral argument, Bailey Pinney also represented that it had phone records for Ms. Mac Farlane's toll-free number that were billed to the Howe Avenue address.  Even taken collectively, such evidence is insufficient.  "[A] bona fide office is more than a mere address — it is a functioning office." *Tolchin v. Supreme Court Of New Jersey*, 111 F.3d 1099, 1107 (3d. Cir. 1997).  Mere rented office space lacks any of the indicia of office location, including where clients are met, where files are kept, where telephones are answered, where mail is received, and where counsel can be reached during business hours. *See id.* at 1102-03; *see also Ramirez v. England*, 320 F. Supp. 2d 368, 370-71 (D. Md. 2004).

The Court finds that the Sacramento office identified by the Bailey Pinney firm and Ms. Mac

**United States District Court**
For the Northern District of California

1  Farlane on the *pro hac vice* applications and papers on file with the Court is not a bona fide business

2  address and that regular work is not conducted in that California office.  There is no evidence before

3  this Court that Mac Farlane maintained a bona fide, functioning office in California after September

4  2006, while designated as local counsel.  Even when confronted with these allegations and given an

5  opportunity to respond, Bailey Pinney provided remarkably little evidence of a bona fide operating

6  business office at the Howe Avenue address.  Such evidence, to the extent it exists, would

7  presumably within Bailey Pinney's possession and control.

8      Because the Court has already concluded that disqualification of the Bailey Pinney firm is

9  necessary, the Court need not determine whether the inaccuracy of Bailey Pinney's representations

10  regarding the Sacramento office would independently warrant revocation of the *pro hac vice*

11  applications of Messrs. Bailey and Pinney.

12  **B.    Alleged Misconduct That Does Not Support Disqualification.**

13      The remaining allegations of misconduct do not provide a basis this Court fo find a violation

14  of Bailey Pinney's ethical obligations.

15      **1.    Plaintiff's Communications With Witnesses During Stay Of Proceedings**.

16      AutoZone alleges that Bailey Pinney violated a Court-ordered stay of proceedings in

17  connection with Plaintiffs' claims for alleged meal and rest break violations.  In particular,

18  AutoZone alleges that Bailey Pinney obtained sworn statements from at least five witnesses during

19  the stay, and sent hundreds of letters to putative class members regarding the case.

20      Neither of these actions constitutes a violation of the Court-ordered stay.  The Court's stay

21  orders halted prosecution of Plaintiffs' meal and rest break claims, but cannot be reasonably read to

22  prevent Bailey Pinney from taking further actions to privately prepare Plaintiffs' case. (Docket Nos.

23  61 & 82.)  Nothing in this Court's stay orders prohibited either side from engaging in informal

24  investigation of the stayed claims, nor from communicating with potential witnesses.[13]  AutoZone's

25  assertion that the obtaining of declarations from witnesses during the stay period was equivalent to

26  conducting "one-way depositions, without the benefit of notice and cross-examination or objections

27  _____

28      [13] Indeed, a blanket prohibition on such communications, that was not narrowly-tailored and based on specific findings, would constitute a problematic prior restraint on communications with putative class members. See *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981).

United States District Court

For the Northern District of California

by an opponent" (Motion at 11:19-21) distorts the nature of these investigatory steps taken by Bailey Pinney. Adequate safeguards exist to ensure that, once the stay is lifted, AutoZone has the opportunity to depose such witnesses.

      **2.    Bailey Pinney's Sending Of "Unauthorized" Notices To Class Members**.

      AutoZone's intimation in its Motion (largely abandoned on reply) that Bailey Pinney violated ethical precepts simply by sending letters to putative class members is misguided. AutoZone conflates counsel's independent communications directed at putative class members with the Court's involvement in authorizing or prohibiting pre-certification communications. (*See* Motion at 12:23-13:2 & n.9). The cases cited by AutoZone discuss only the impropriety of the latter. Under *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), the Court's authority to <u>limit</u> communications from named plaintiffs and their counsel to prospective class members is circumscribed. "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. "[S]uch a weighing-identifying the potential abuses being addressed-should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102; *see also Domingo v. New England Fish Co.*, 727 F.2d 1429, 1440 n.9 (9th Cir. 1984).

      Although Bailey Pinney's communications with represented parties raises concerns in connection with Rule 2-100 (as discussed above), there is no basis to conclude that it is independently unethical for Bailey Pinney to communicate with putative class members in this litigation.

      **3.    Mr. Bailey's Candor Regarding His Pending Oregon Disciplinary Charge.**

      AutoZone contends that Bailey Pinney misled the Court regarding Mr. Bailey's standing with the Oregon State Bar in his *pro hac vice* application in the related *Ellison v. Autozone* matter.

      On September 22, 2006, disciplinary proceedings were initiated against Mr. Bailey before the Oregon State Bar. The nature of these disciplinary charges could have resulted in his suspension. (Hoffman Decl., Exh. 9 at ¶ 18.) On January 18, 2007, Mr. Bailey represented to the

1   Court, in his *pro hac vice* application in the related *Ellison* action, that he was a member in good

2   standing of the state bars of Oregon and Washington. (Hoffman Decl., Exh. 7.)   At the time Mr.

3   Bailey made this representation, he was aware of the pending disciplinary proceedings against him.

4   Approximately a month later, on February 20, 2007, the Supreme Court of Oregon approved a

5   stipulation for discipline against Mr. Bailey.   In particular, Mr. Bailey agreed to a public reprimand

6   for acting with a conflict of interest and failing to disclose the conflict to his client for the purpose of

7   providing informed consent.   (Hoffman Decl., Exhs. 9 & 10.)   On April 11, 2007, the Washington

8   State Bar issued reciprocal discipline to Mr. Bailey regarding this violation.   (Hoffman Decl., Exh.

9   10.)[14]

10          Mr. Bailey's decision not to disclose his pending disciplinary charge did not violate any

11  express rule of this Court.   Civil Local Rule 11-3(a)(1) requires a *pro hac vice* applicant to certify

12  under oath that "he or she is an active member in good standing of the bar of a United States Court

13  or of the highest court of another States or the District of Columbia, specifying such bar."   Unlike

14  the local rules in several other districts, the Northern District's local rule does not explicitly require

15  the affiant to recite that he or she has no disciplinary or grievance proceedings pending.   *Compare*

16  *U.S. v. Howell*, 936 F. Supp. 767, 769 (D.C. Kan. 1996) (District of Kansas local rules require

17  applicant to recite that "no disciplinary or grievance proceedings have been filed or are pending").

18  Moreover, the Northern District's local rule does not define the term "good standing."   At the time

19  that Mr. Bailey made his representation, he was not under suspension from the Oregon State Bar and

20  arguably remained in "good standing" with that bar.   On this record, the Court is unable to find that

21  Bailey Pinney violated Civil Local Rule 11-3.[15]

22          **4.      Bailey Pinney's Candor To Magistrate Judge Chen Regarding Its Intended Use**

23

24          [14] Regardless of whether Mr. Bailey violated Civil Local Rule 11-3, Mr. Bailey's prior stipulated discipline for
        acting with a conflict of interest and failing to disclose the conflict to his client for the purpose of providing informed consent

25      provides further support for the Court's conclusion that Bailey Pinney's violation of Rule of Professional Conduct 3-310(c)(3)
        in this case warrants disqualification.

26

27          [15] Mr. Bailey's decision not to disclose the pending disciplinary charge is nonetheless troubling.   "An attorney does
        not simply act as an advocate for his client; he is also an officer of the court. As such, an attorney has a duty of good faith
        and candor in dealing with the judiciary."   *United States v. Associated Convalescent Enter., Inc.*, 766 F.2d 1342, 1346 (9th

28      Cir. 1985); *see also* Local Rule 11-4 (requiring attorneys appearing before this Court to "practice with the honesty, care, and
        decorum required for the fair and efficient administration of justice.")

United States District Court
For the Northern District of California

### Of The Contact Information For Putative Class Members.

AutoZone contends that Bailey Pinney misled Magistrate Judge Chen regarding the reasons it sought discovery of documents and data from AutoZone that included putative class member names and addresses. AutoZone contends that Bailey Pinney used this information to send communications to the putative class members without advising the Court in advance of its intentions.

On the record before the Court, Bailey Pinney's use of this information produced in discovery did not constitutes a misuse of the discovery process or breach a duty of candor with the Court. As an initial matter, although the Magistrate indicated that the production should be treated as "attorneys eyes only" (Reply Hoffman Decl., Exh. 28 at 18:10-12), the Stipulated Protective Order does not place restrictions on the use of information to litigate the case (Docket No. 75).

Moreover, the record before this Court does not adequately detail the meet-and-confer communications that the Magistrate anticipated would take place regarding privacy issues, redactions, and the inclusion of identifying information. The transcript of the June 14, 2006 proceedings in front of Magistrate Judge Chen does not contain any disclosure or discussion by Bailey Pinney of the possibility that identifying information would be used by Bailey Pinney to contact putative class members. (Reply Hoffman Decl., Exh. 28.) However, at that hearing, AutoZone did specifically flag concerns that the requested information "intrudes upon both the company and non-party privacy interests" and suggested the possibility of "remov[ing] any identifying information." (*Id.* at 13:25-14:10.) The parties and the Magistrate agreed at the hearing to a further meet-and-confer process to resolve such issues. (*Id.* at 13:25-14:10, 18:10-12, 21:3-8.) The record before this Court does not make clear what further meet-and-confer negotiations took place between the parties regarding these privacy and redactions issues. On this incomplete record, the Court is unable to conclude that Bailey Pinney acted improperly with respect to the names and addresses of AutoZone employees.

### 5.    Tendering Misleading Testimony From Class Members.

AutoZone contends that Bailey Pinney has tendered false and misleading testimony, in the form of affidavits from putative class members that later turned out to be false or were recanted by

21

1    the witnesses under examination.  AutoZone's attempt to identify contradictions between these

2    witnesses' affidavits and deposition testimony does not hold up to scrutiny.

3          With respect to Plaintiff Medrano, AutoZone does not adequately establish that she or Bailey

4    Pinney intentionally submitted false testimony.  Plaintiff Medrano did not provide any declaration in

5    support of Plaintiffs' motion for class certification; instead, Bailey Pinney cited to her deposition

6    testimony that she closed the store three times a week. (Mac Farlane Class Cert. Decl., Exh. 10 at

7    22:21-25.)  AutoZone contended, in opposition to the class certification motion, that this testimony

8    cannot be accurate in light of time records that she contemporaneously signed that are inconsistent

9    with her closing the store.  (Docket No. 144.)  On reply, Plaintiffs conceded that they overlooked

10   that Medrano clarified later in the deposition that she could not remember exactly how often she

11   closed the store.  (Docket No. 150.)  However, as Plaintiffs also point out, Medrano testified that

12   while the timecards accurately reflect when she punched in and punched out, they do not capture her

13   off-the-clock time.  (*Id.*)  AutoZone's identification of contradictions between the time records and

14   Medrano's testimony certainly goes to the accuracy of Medrano's recollections, and may well be

15   relevant to the factfinder's determination of her credibility, but does not suffice to establish that she

16   or Bailey Pinney intentionally submitted false testimony.

17         With respect to declarant McDaniel, AutoZone fails to identify any testimony directly

18   contradicting the identified portion of his declaration submitted in support of the class certification

19   motion.  (Mac Farlane Class Cert. Decl., Exh. 7.)

20         With respect to declarant Knox, Knox's declaration submitted in support of the class

21   certification motion states that he did not get vacation pay until almost two weeks later.  (Mac

22   Farlane Class Cert. Decl., Exh. 6.)  Knox made no claim in his declaration that he worked off the

23   clock, and the deposition testimony identified by AutoZone does not contradict his declaration.

24         **6.      Failure to Disclose Witnesses.**

25         AutoZone contends that Bailey Pinney breached its obligation under Rule 26(a)(1) to

26   disclose at least seven witnesses who would offer testimony in support of class certification.

27   According to AutoZone, Bailey Pinney was aware of these witnesses – two expert, five percipient –

28   as early as February or March 2007, but did not reveal them until June 2007.

**United States District Court**
For the Northern District of California

22

**United States District Court**
For the Northern District of California

1    Bailey Pinney's delay in disclosing witnesses, while possibly an example of tactical

2  gamesmanship, does not rise to the level of an ethical violation. As Plaintiff points out, the parties

3  disagreed over the effect of a prior stipulation and proposed order that had been agreed to by the

4  parties but not signed by the Court. After the Magistrate resolved this dispute in favor of AutoZone

5  (Docket No. 171), Plaintiff complied with the decision. AutoZone's characterization of this ruling –

6  that the "Court has made a finding that plaintiff's attorneys concealed witnesses" – is not accurate.

7  Magistrate Judge Chen made no explicit ruling to this effect. Moreover, AutoZone has had an

8  opportunity to depose Plaintiff's witnesses and are further protected by a stipulation between the

9  parties that the class certification hearing will take place no sooner than 30 days after AutoZone

10  receives the transcripts of those depositions. The Court cannot conclude, on the record before it, that

11  the position taken by Bailey Pinney on the witness disclosure issue was a breach of ethical duties.

12    **7.    Representation Of Multiple Classes Against The Same Defendant.**

13    AutoZone contends that Bailey Pinney has a conflict of interest because it is prosecuting a

14  similar class action against Autozone in Oregon – the *Joarnt* action. Prosecuting claims against the

15  same defendant in different actions can create a conflict of interest for the attorneys, placing a class

16  at risk that its interests will be compromised for the benefit of parties in another action. *See Kayes v.*

17  *Pacific Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995); *Sullivan v. Chase Inv. Serv., Inc.*, 79 F.R.D.

18  246, 258 (N.D. Cal. 1978). However, AutoZone has introduced no evidence from which the Court

19  could conclude that Bailey Pinney's simultaneous representation of the two classes undermines its

20  ability to adequately represent each class in this particular situation. The sole email to which

21  AutoZone cites does not indicate, as AutoZone contends, that Bailey Pinney tied negotiations in the

22  two cases together. (Docket No. 144 at 13.) On this record, the Court cannot conclude that this

23  allegation supports disqualification.

24    **8.    New Allegations In Reply.**

25    In its reply, AutoZone raises new allegations that Bailey Pinney and one of Plaintiff's experts

26  misled the Court and submitted false expert testimony.[16] However, AutoZone's allegations that Mr.

27

28    [16] Plaintiff filed a motion for leave to file a surreply addressing these newly-rised allegations. (Docket No. 199.) Good cause appearing therefore, the Court **GRANTS** the motion. The Court has considered the contends of the surreply.

23

**United States District Court**

For the Northern District of California

1    Shubin's testimony was intentionally false are not adequately supported by the record.

2         First, Mr. Shubin's declaration in support of Plaintiff's pending motion for leave to

3    supplement expert report, which represents that he newly discovered errors in his data analysis, is

4    not inconsistent with his deposition testimony. In deposition, Mr. Shubin explained that his

5    correction of errors has been an iterative and multi-step process, and that the April 11, 2007 email

6    reflects only an initial and ultimately unsuccessful attempt to correct those errors. (Reply Hoffman

7    Decl., Exh. 27 at 57:24-72:13.) AutoZone has overstated the degree to which Mr. Shubin's

8    declaration is contradicted by his deposition testimony.

9         Second, Mr. Shubin's declaration that he was the only "programmer" who worked on the

10   database is not rendered false by his testimony that he enlisted his wife, son, daughter and son's

11   girlfriend to help him with the mechanical extraction of information for the database. Mr. Shubin's

12   deposition testimony makes clear that these family members were not operating as programmers.

13   (*Id.* at 38-40, 80.)

14        Third, in deposition, Mr. Shubin did concede that calculations that he extracted 25,000 pages

15   of data, and that he worked 300 hours in extracting the data, were inaccurate and overstated the

16   amount of work given to those tasks. (*Id.* at 84:8-86:11.) However, AutoZone has failed to

17   establish that these inaccuracies rise to the level of intentional misconduct.

18   **C.    AutoZone's Standing To Seek Disqualification.**

19        At oral argument, Bailey Pinney for the first time challenged AutoZone's standing to seek

20   disqualification.[17] Questions of standing for purposes of disqualification motions must be decided

21   under federal law. *See Colyer v. Smith*, 50 F. Supp. 2d 966, 971 n.2 (C.D. Cal. 1999); *F.D.I.C. v.*

22   *U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995). Accordingly, "[a] non client litigant must

23   establish a personal stake in the motion to disqualify sufficient to satisfy the 'irreducible

24   constitutional minimum' of Article III." *Colyer*, 50 F. Supp. 2d at 971. However, "in a case where

25   the ethical breach so infects the litigation in which disqualification is sought that it impacts the

26   moving party's interest in a just and lawful determination of her claims, she may have the

27

28        [17] Because Bailey Pinney had not previously raised the standing issue, and cited authority at the hearing not
     previously brought to the attention of counsel or the Court, the Court permitted AutoZone to file a supplemental letter brief
     on this issue after the hearing. (Docket No. 203.)

1    constitutional standing needed to bring a motion to disqualify based on a third-party conflict of

2    interest or other ethical violation." *Id.* at 971-72.[18]

3          The Court finds that Autozone has adequately established Article III standing to seek

4    disqualification here. To begin with, the conflict of interest identified by AutoZone impairs

5    AutoZone's interest in a just and binding adjudication of the class claims in *Martinez*. Just as

6    importantly, because Bailey Pinney seeks to represent a putative class in this litigation, AutoZone

7    also has stake in reaching a just and binding adjudication regarding the merits of this case, without

8    exposure to challenge by absent class members at a later date based on Bailey Pinney's breach of

9    ethical rules

10         In particular, the two most serious ethical breaches discussed above – an ongoing concurrent

11   conflict of interest without written informed consent, and improper contact with represented parties,

12   including putative class members – also tend to undermine the validity of these proceedings, and

13   trigger this Court's inherent obligation to manage the conduct of attorneys who appear before it, to

14   ensure the fair administration of justice, and to assure that the interests of unnamed class members

15   are adequately protected. *See Colyer*, 50 F. Supp. 2d at 972. Because these two ethical breaches "so

16   infect the litigation in which disqualification is sought that [they] impact[] the moving party's

17   interest in a just and lawful determination" of its claims, AutoZone has standing to seek

18   disqualification. *Id.* at 971-72.

19         *DCH Health Services Corp. v. Waite*, 95 Cal. App. 4th 829, 832 (2002), cited by Bailey

20   Pinney, does not point towards a different result. As an threshold matter, the question of standing to

21   bring a disqualification motion is determined by federal law, not state law. In any event, *DCH* does

22   not discuss Article III standing principles. Moreover, in its discussion of standing under California

23   law, *DCH* analyzed standing solely in the context of an alleged breach of the duty of confidentiality,

24   which is not the basis for AutoZone's disqualification motion here. Finally, *DCH* did not involve

25

26         [18] *See also Abbott v. Kidder Peabody & Co., Inc.*, 42 F. Supp. 2d 1046, 150 (D. Colo. 1999) (defendants had standing
     to move for disqualification of plaintiffs' counsel where "interests of the public are so greatly implicated that an apparent
27   conflict of interest may tend to undermine the validity of the proceedings"); *Beck v. Board of Regents of State of Kansas*, 568
     F. Supp. 1107, 1111 (D. Kan. 1983) (defendants had standing to seek disqualification of plaintiffs' counsel based on conflict
28   where conflict issues placed "confidence in the integrity and efficiency of the legal system and the legal profession" under
     scrutiny).

United States District Court
For the Northern District of California

1  class action claims.  The presence of class action claims in both this action and the *Martinez* action

2  provide AutoZone with a sufficient stake in the outcome of its Motion to confer Article III standing.

3                                                    **CONCLUSION**

4            For the foregoing reasons, the Court **GRANTS** the Motion and **DISQUALIFIES** the Bailey

5  Pinney firm from further representation of Plaintiffs, putative class members, or any other persons or

6  entities involved in this matter.

7  **IT IS SO ORDERED.**

8

9

10  Dated: December 5, 2007

11                                                            MARTIN J. JENKINS
                                                              UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28